# REVISED OPINION

## UNITED STATES COURT OF APPEALS
### For the Fifth Circuit

---

No. 96-20100

---

CHAIR KING, INC. ET AL,

Plaintiffs-Appellants,

VERSUS

HOUSTON CELLULAR CORPORATION, ET AL,

Defendants-Appellants.

---

Appeal from the United States District Court
For the Southern District of Texas, Houston Division

---

December 15, 1997

Before POLITZ, Chief Judge, and  HIGGINBOTHAM and DENNIS, Circuit Judges.

DENNIS, Circuit Judge.

Because we conclude that Congress granted state courts exclusive subject matter jurisdiction over private actions under the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227,  we vacate the judgment of the district court and remand this case to it with directions to dismiss this cause for want of subject matter jurisdiction.

I.

1

The Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, Pub. L. No. 102-243, 105 Stat. 2394 (1991)(TCPA), in pertinent part, provides that "[i]t shall be unlawful for any person within the United States . . . to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C). The TCPA creates a private right of action to obtain an injunction or to recover damages or $500, whichever is greater, for each violation. § 227(b)(3). The damage award may be trebled if the court finds that a violation was willful or knowing. Id. The private right of action may be filed "if otherwise permitted by the laws or rules of court of a State, . . . in an appropriate court of that State." Id.

## II.

The plaintiffs-appellants brought this private action in federal district court for damages under the TCPA alleging that the defendants-appellees had sent unsolicited advertisements to their telephone facsimile machines. In their private action, the plaintiffs also sued on behalf of others who received unsolicited fax advertisements and joined state law claims of civil conspiracy, invasion of privacy, and trespass to chattels. Defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(1)&(6). The district court dismissed all claims except the trespass to chattels claim, holding that (1) the TCPA only regulates interstate telemarketing activity, (2) the TCPA is preempted by the McCarran-Ferguson Act, 15 U.S.C. § 1012, with respect to the defendants that are insurance companies, and (3) the TCPA does not violate the First or Fifth Amendments of the Constitution of the United States. Notices of appeal were filed by the plaintiffs and the insurance defendants.

## III.

Federal courts have only the power authorized them by Congress pursuant to Article III of the Constitution. Bender v. Williamsport Area School District, 475 U.S. 534, 541 (1986). Because of this, a federal appellate court has a special obligation to satisfy itself subject matter jurisdiction exists in federal courts. Id. The issue of subject matter jurisdiction as a question of law is subject to plenary review by this court. Ingalls Shipbuilding, Inc. v. Asbestos Health Claimants, 17 F.3d 130, 132 (5th Cir. 1994).

The question of subject matter jurisdiction in the federal courts of private actions authorized by the TCPA is a matter of first impression in this circuit. Only the Fourth Circuit Court of Appeals and two federal district courts have decided the issue. The Fourth Circuit, in International Science & Technology Institute, Inc. v. Inacom Communications, Inc., 106 F.3d 1146, 1158 (4th Cir. 1997), held that the TCPA gives subject matter jurisdiction of claims filed by private citizens only to state courts. The district court for the Southern District of New York adopted the position taken by the Fourth Circuit. Foxhall Realty Law Offices, Inc. v. Telecommunications Premium Services, Ltd., 975 F. Supp. 329 (S.D.N.Y. 1997). The district court for the Southern District of Indiana, however, concluded that the TCPA conferred subject matter jurisdiction of private actions upon both the state and federal courts. See Kenro, Inc. v. Fax Daily, Inc., 904 F. Supp. 912 (S.D. Ind. 1995) ("Kenro I"), 962 F. Supp. 1162 (S.D. Ind. 1997) ("Kenro II"). We agree with the Fourth Circuit and hold that federal courts lack subject matter jurisdiction of private actions under the TCPA.

Article III, Section 1, of the Constitution of the United States vests the federal judicial power in a Supreme Court and "in such inferior courts as Congress may from time to time ordain and establish." U.S. Const. Art. III, §1. Article III, Section 2 of the Constitution provides that the judicial power of the United States shall extend, inter alia, to all cases arising under the Constitution, the laws of the United States, and treaties made under their authority. Thus, Article III creates no inferior federal courts and vests

3

such courts, when created by Congress, with no jurisdiction. Lockerty v. Phillips, 319 U.S. 182, 187 (1943); Cary v. Curtis, 44 U.S. (3 How.) 236, 244-45 (1845); Turner v. Bank of North America, 4 U.S. (4 Dall.) 8, 11 (1799); 15 MOORE'S FEDERAL PRACTICE §100App.01, 100App.--4 (3d. ed. 1997). The enumeration in Section 2 of Article III of the cases and controversies to which the federal judicial power extends is not self-executing in relation to the inferior federal courts. Kline v. Burke Const. Co., 260 U.S. 226, 233-234 (1922); 15 MOORE'S FEDERAL PRACTICE § 100App.01, 100App.--4 (3d. ed. 1997). Within the permissible limits stated in the Constitution, however, Congress can confer some or all of the judicial power upon the inferior federal courts, and attach conditions and limitations to the jurisdictional grant. 15 MOORE'S FEDERAL PRACTICE § 100App.01, 100App.--4 (3d. ed. 1997). Accordingly, as the Supreme Court, in Sheldon v. Sill, 49 U.S. (8 How.) 441, 448 (1850), explained:

> [H]aving a right to prescribe, Congress may withhold from any court of its creation jurisdiction of any of the enumerated controversies. Courts created by statute can have no jurisdiction but such as the statute confers. No one of them can assert a just claim to jurisdiction exclusively conferred on another, or withheld from all.

Section 1331 of Title 28 of the United States Code provides, in language that repeats the language of Article III, that the district courts shall have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." Although this language suggests that Congress intended in § 1331 to confer upon federal courts the full breadth of permissible "federal question" jurisdiction, § 1331 has been construed more narrowly than its constitutional counterpart. See Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 494-95 (1983); Romero v. International Terminal Operating Co. 358 U.S. 354, 379-80 (1959).

There is no "'single, precise definition'" of when a case falls within the original "federal question" jurisdiction of the federal courts; "rather, 'the phrase "arising under"

4

masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system.'" Merrel Dow Pharmaceuticals v. Thompson, 478 U.S. 804, 808 (1986) (quoting Franchise Tax Board v. Constr. Laborers Vac. Trust, 463 U.S. 1, 8 (1983)). The most familiar definition of the statutory "arising under" limitation is Justice Holmes' statement, "A suit arises under the law that creates the cause of action." American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916). It is well settled, however, "that Justice Holmes' test is more useful for describing the vast majority of cases that come within the district courts' original jurisdiction than it is for describing which cases are beyond district court jurisdiction." Franchise Tax Board, 463 U.S. at 9. Moreover, that test provides only a starting point for determining whether Congress, in creating a cause of action, has withheld jurisdiction of a particular case or controversy from any or all of the courts of its creation or has conferred jurisdiction thereof exclusively on another. Sheldon, 49 U.S. (8 How.) at 448. Inferior federal courts' "federal question" jurisdiction ultimately depends on Congress's intent as manifested by the federal statute creating the cause of action. Id.; International Science & Technology Institute, Inc., 106 F.3d at 1153-55.

The search for Congress's intent as manifested in the TCPA must of course begin with the text of the statute itself. New York State Conf. of Blue Cross and Blue Shield Plans v. Traveler's Insurance Co., 514 U.S. 645, 655 (1995). The TCPA, § 227(b)(3), in pertinent part, provides:

> Private right of action. A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State--
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violations,
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
> (C) both such actions.

The TCPA expressly creates a private right of action for damages and injunctive

5

relief by a person who suffers a violation of the statute; and expressly grants jurisdiction to state courts, if permitted by state law or rules of state courts, to consider and decide such cases or controversies. The TCPA is silent as to whether the express jurisdictional grant to state courts is exclusive or is coupled with an implicit concurrent grant of jurisdiction to federal courts.

In determining the legislative intent, we follow the cardinal rule that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context. King v. St. Vincent's Hospital, 502 U.S. 215, 221 (1991) (citing Shell Oil Co. v. Iowa Dept. of Revenue, 488 U.S. 19, 25, n.6, 26 (1988)) (quoting NLRB v. Federbush Co., 121 F.2d 954, 957 (2nd Cir. 1941)) ("Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used. . . .")(L. Hand, J.); United States v. Hartwell, 73 U.S. (6 Wall.) 385, 396 (1867)(in construing statute court should adopt that sense of words which best harmonizes with context and promotes policy and objectives of legislature); 2A Singer, Sutherland Statutory Construction §46.05 ( 5th ed. 1992). If the language alone is not dispositive, we must delve into the history and purpose of the statute. Adams Fruit Co., Inc. v. Barrett, 494 U.S. 638, 642 (1990).

By analogy, we also advert to the Supreme Court's approach for determining whether a private remedy is implicit in a statute not expressly providing one. Such a claim poses an issue of statutory construction. Karahalios v. National Federation of Federal Employees, 489 U.S. 527, 532 (1989). The "'ultimate issue is whether Congress intended to create a private cause of action,'" Id. (quoting California v. Sierra Club, 451 U.S. 287, 293 (1981)(citations omitted)); see also Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979). Unless such "congressional intent can be inferred from the language of the statute, the statutory structure, or some other source,

6

the essential predicate for implication of a private remedy simply does not exist." Thompson v. Thompson, 484 U.S. 174, 179 (1988) (quoting Northwest Airlines, Inc. v. Transport Workers, 451 U.S. 77, 94 (1981)). "It is also an 'elemental canon' of statutory construction that where a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies." Karahalios, 489 U.S. at 533 (citing Transamerica Mortgage Advisers, Inc. v. Lewis, 444 U.S. 11, 19 (1979)). In such cases, "'[i]n the absence of strong indicia of contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate.'" Karahalios, 489 U.S. at 533 (quoting Middlesex County Sewerage Authority v. Sea Clammers, 453 U.S. 1, 15 (1981)).

The TCPA presents an unusual constellation of statutory features, viz., the express creation of a private right of action, an express jurisdictional grant to state courts to entertain them, and silence as to federal court jurisdiction of private actions. As a general principle, "state courts may assume subject-matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state-court adjudication." Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 477-78 (1981) (citing Charles Dowd Box, Co., Inc. v. Courtney, 368 U.S. 502 (1962)); Tafflin v. Levitt, 493 U.S. 455, 459-461 (1990). Thus, the TCPA's express grant of jurisdiction would not have been necessary if Congress had intended to confer concurrent jurisdiction upon state and federal courts. "Concurrent jurisdiction has been a common phenomenon in our judicial history, and exclusive federal court jurisdiction over cases arising under federal law has been the exception rather than the rule." Charles Dowd Box Co., Inc., 368 U.S. at 507-508. Because a statute should be construed in a way that gives meaning and effect to all the provisions, it appears the specific authorization of state court jurisdiction was intended as more than a confirmation of concurrent jurisdiction. United States v. Nordic Village,

7

Inc., 503 U.S. 30, 36 (1992); Reich v. Acadian Corp., 110 F.3d 1192, 1196 (5th Cir. 1997).  It is also significant that Congress expressly provided for federal court jurisdiction over actions instituted by states on behalf of their residents. See 47 U.S.C. §227 (f)(2).  In fact, Congress established exclusive federal jurisdiction and specifically addressed venue, service of process, and interaction with the FCC enforcement efforts. 47 U.S.C. § 227 (f)(2), (4), (7).  Congress's failure to  address any of these matters with regard to the private actions provides support for our conclusion that Congress intended only state courts to handle these private actions.

As the Fourth Circuit indicated, the absence of a specific reference to federal court jurisdiction of private actions in combination with the express grant of state court jurisdiction is "even more significant in light of the rest of the Communication Act where Congress provided specifically for concurrent jurisdiction when it so intended." International Science & Technology Institute Inc., 106 F.3d at 1152.  See, e.g.,  47 U.S.C. § 207 (authorizing suit for damages against common carriers in any district court of the United States of competent jurisdiction); 47 U.S.C. § 214 (c) (authorizing any court of general jurisdiction to issue injunction for extension of lines or discontinuation of services);  47 U.S.C. § 407 (authorizing suit in federal or state court of general jurisdiction for common carrier's failure to comply with order of payment;  47 U.S.C. § 551 (f)(1) (authorizing civil action against cable operator in a United States district court);  47 U.S.C. § 553 (c)(1) (authorizing suit in federal court or any other court of competent jurisdiction for unauthorized cable reception);  47 U.S.C. § 555 (a) (authorizing suit in federal or state court of general jurisdiction to review actions by franchising authority); 47 U.S.C. § 605 (e)(3)(A) (authorizing civil action in federal court or any other court of competent jurisdiction for unauthorized publication).  We agree with the Fourth Circuit that is it significant that "while Congress has in the Communications Act explicitly expressed its intent to provide concurrent jurisdiction, it

8

did not do so in 47 U.S.C. § 227 (b)(3)." International Science & Technology Institute, Inc., 106 F.3d at 1152.

The history and purpose of this statute provide further support for the conclusion that Congress intended to confer exclusive jurisdiction upon the state courts. Congress enacted the TCPA as a supplement to state efforts to regulate telemarketing activities. This nonconsensual telemarketing activity was viewed by Congress as an invasion of privacy, an impediment to interstate commerce, and a disruption to essential public safety services. S. REP. NO. 178, 102nd Cong., 1st Sess. 1, 5 (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1973. Congressional action was needed as states had no independent regulatory power over interstate telemarketing activities. Id., 47 U.S.C. § 227, Congressional Finding No. 7. By creating a private right of action in state courts, Congress allowed states, in effect, to enforce regulation of interstate telemarketing activity.

On November 7, 1991, Senator Hollings, author of Senate Bill 1462 which became the TCPA, explained the contents of the substitute bill he offered that day. One of the provisions of that bill was the private right of action currently at issue. See 137 CONG. REC. S.16,204, 16,205-6 (daily ed. Nov. 7, 1991) (statement of Senator Hollings). He explained that the private right of action was intended to make it easier for consumers to recover damages. The provision, he continued, would allow consumers to bring an action in *state* court. Senator Hollings indicated the question of proper venue within the state was left for state legislatures to decide as this was constitutionally a matter for the states, not the federal government, to decide. Nevertheless, he expressed his hope that "[s]tates will make it as easy as possible for consumers to bring such actions, preferably in small claims court." Id. at 16,205. The senator explained a small claims or similar court would be an especially appropriate forum as consumers could appear without an attorney. He emphasized the benefits of

a private right of action would be defeated if attorney fees proved greater than potential damages under the statute. He continued, "I thus expect that the [s]tates will act reasonably in permitting their citizens to go to court to enforce this bill." Id. at 16,206. Senator Hollings also addressed the right of action provided to states under the proposed legislation. He explained, in response to concerns that the FCC might not have sufficient resources to enforce the bill, that state attorneys general would be allowed under the bill to enforce its provisions in *federal* court. Id.

We agree with the Fourth Circuit's conclusion that "[w]hile Senator Hollings did not explicitly say that only state court jurisdiction was appropriate, we believe the clear thrust of his statement was consistent with the bill's text that state courts were the intended fora for private TCPA action." International Science & Technology Institute, Inc., 106 F.3d at 1153. Support for this conclusion may be found by examining the language of the statute as enacted in light of the senator's statements. Senator Hollings indicated the intent of the bill was for consumers to easily be able to enforce the bill by recovering damages. He emphasized states should facilitate this by providing fora in which consumers could appear without an attorney. The statute's text evidences Senator Hollings's hopes as it provides for the right of action in state court, but gives states discretion over its administration. While Congress may have faced constitutional constraints in its directives to the state courts, this would not be true with regard to the federal courts. Although Congress could have added provisions to the TCPA facilitating private actions in federal courts as Senator Hollings suggested the states should do, no reference to federal courts was made at all. This absence is hardly consistent with the senator's intention of encouraging consumers to bring actions under the TCPA. From this, we conclude that Congress failed to mention federal courts in conjunction with its creation of the private rights of action because it did not intend federal courts to hear them.

10

The appellants contend that concurrent subject matter jurisdiction is presumed under the principles espoused in Gulf Offshore Co. v. Mobil Oil Corp., supra. However, that case involved a federal statute granting federal district courts "original jurisdiction of cases and controversies arising out of or in connection with any operations conducted on the outer Continental Shelf. . . ." Gulf Offshore Co., 453 U.S. at 478-79 (quoting 43 U.S.C. § 1333(b)). The issue was whether state courts which were not mentioned in the statute also had subject matter jurisdiction. The Supreme Court explained that "[i]n considering the propriety of state-court jurisdiction over any particular federal claim, the Court begins with the presumption that state courts enjoy concurrent jurisdiction." Id. at 478. This presumption, according to the Court, could be rebutted by "an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." Id. In Gulf Offshore Co., the Court concluded that the presumption had not been rebutted because Congress did not explicitly grant federal courts exclusive jurisdiction, the operation of the statute would not be frustrated by state court jurisdiction over personal injury actions, and the legislative history could not be read to rebut the presumption of concurrent state court jurisdiction. Id. at 478-484.

In the present case, we are not considering the propriety of state court jurisdiction over a federal claim. Instead, we are presented with the question of whether Congress intended to grant federal courts implied concurrent jurisdiction of federal claims that it expressly granted state courts jurisdiction to adjudicate. After reviewing the TCPA's text, purpose, and history, we conclude Congress intended the state courts to have exclusive jurisdiction over private actions filed under the TCPA.[1]

_____

[1] The FCC has not enacted a regulation or issued an order addressing this issue. A publication prepared by the FCC to answer questions consumers might have about the TCPA and federal rules and regulations enacted pursuant thereto, however, arguably provides some support for our conclusion. See Telephone Solicitations,

11

The judgment of the district court is VACATED, and the case is REMANDED to the district court with directions to DISMISS THE CAUSE FOR LACK OF SUBJECT MATTER JURISDICTION.

---

Autodialed and Artificial or Prerecorded Voice Message Telephone Calls, and the Use of Facsimile Machines, 8 F.C.C.R. 480, 1993 W.L. 756669 (F.C.C.) (January 11, 1993). In explaining what actions may be taken to address violations of the TCPA and FCC rules and regulations, the FCC indicated a consumer could "file suit in state court (if your state permits such actions)." Additionally, "states can initiate a civil action in federal district courts. . . ." Id. at 4. The possibility of a federal forum for private actions was not mentioned.