OPINION OF THE COURT
Arthur M. Schack, J.
*160 Plaintiff, a law firm, brings this motion to vacate summary judgment, which was granted in its favor, to allow plaintiff leave to amend the caption to continue this case as a class action or to dismiss this case without prejudice. If I were to grant any portion of this motion it would make this court an accomplice to plaintiffs counsel’s use of the judicial system for his pecuniary interest. If plaintiffs counsel prevails on this motion, he should use for his practice a variation of the New York State Lottery’s slogan “it’s a dollar and a dream” with “it’s an index number and a dream.”
Plaintiff succeeded with its summary judgment motion for defendant’s violation of a federal statute, the Telephone Consumer Protection Act of 1991 (47 USC § 227 [TCPA]), which prohibits the transmission of an unsolicited or “junk” advertisement to telephone facsimile (fax) machines. Plaintiff was awarded the statutory penalty of $500. Plaintiffs counsel asserts on page 16 of his memorandum of law in support of the instant motion that he is cocounsel for five TCPA class actions throughout the country and has also litigated several individual TCPA cases in New York State. Further, he adds that “neither Plaintiff not Plaintiff’s counsel have interests antagonistic to those of the [purported] class.” Plaintiff’s counsel moves, in search of the proverbial pot of gold at the end of the rainbow, to vacate his client’s individual victory and convert it to a class action, in contravention of CPLR 901 (b). Plaintiff, who was awarded the statutory $500 penalty, would receive no additional benefit if I were to grant this motion. The only potential beneficiary, if this motion is granted, is plaintiffs counsel.
CPLR 901, enacted in 1975, specifies the criteria for a class action, which in the appropriate circumstances is necessary to address environmental concerns and protect consumer rights. McLaughlin, An Overview (McKinney’s Cons Laws of NY, Book 7B, CPLR art 9, at 310-311) explains:
“The Judicial Conference, which drafted the bill, had two basic goals:
(1) to set up a flexible and functional scheme permitting class actions that would heretofore have been dismissed; and (2) to prescribe guidelines for judicial management of class actions . . .
“The heart of the statute is CPLR 901. Borrowing generously from Federal Rule 23, section 901 authorizes a class action whenever the class is sufficiently large to make a representative action the *161 fairest and most convenient way to prosecute or defend the suit.”
Plaintiffs counsel, in the instant case, attempts to pervert the use of class actions to utilize this court to assist him in increasing the size of his exchequer. Martha Neil, a lawyer and writer on legal affairs, in the July 2003 ABA Journal, New Route for Class Actions (at 48), surveyed class action litigation problems and discerned (at 50), that class actions “often result in minuscule rewards for plaintiffs, according to consumer advocates.” Further, Ms. Neil quotes (at 50) Lawrence W Schonbrun, a California attorney who represents class members challenging class actions outcomes. Mr. Schonbrun observed with respect to class actions that “[i]t’s just another milking of the system by professionals, in this case lawyers . . . It’s a horrible swindle of the American public in the name of trying to help them. And that the courts and the legal system are at the center of this is shocking and depressing, to say the least.”
Procedural History
This instant case began in September 2000 when plaintiff received an unsolicited fax in its office (exhibit A of plaintiffs motion). Plaintiff commenced an action the same month (exhibit C of plaintiffs motion) for defendant’s violation of TCPA (47 USC § 227), which in relevant part states:
“b) Restrictions on use of automated telephone equipment
“(1) Prohibitions
“It shall be unlawful for any person within the United States — . . .
“(C) to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine; or . . .
“(3) Private right of action
“A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—
“(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
“(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
“(C) both such actions.
*162 “If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph” (emphasis added).
Ultimately, plaintiff succeeded in the instant case, with an order dated October 1, 2002 and entered on October 21, 2002 (exhibit F of plaintiffs motion), awarding plaintiff the $500 TCPA statutory penalty. (See 47 USC § 227 [b] [3] [B].)
Several months later, plaintiff filed and served the instant motion, to attempt to convert this case to a class action, or in the alternative have the case dismissed (which this court presumes is for purposes of suing defendant and other similar telecommunications companies in a class action). Plaintiffs counsel wants this court to actively assist it in achieving a “big score.” If I were to grant this motion it would be in total disregard of this court’s time and limited resources. Despite plaintiffs counsel’s assertions, on page 6 of his memorandum of law in support of the motion, that “vacating the judgment is clearly ‘in the interest of substantial justice,’ ” the granting of this motion would only be in the interest of legal “chutzpah.” It is “chutzpah” to have this court aid in the padding of plaintiffs counsel’s pockets. If plaintiffs counsel initially had wished to pursue this case as a class action, the court doesn’t understand why plaintiff’s counsel didn’t do so. It is clear that plaintiff seeks the discretion of the court to aid and abet an attempt to raid the treasuries of defendant and possibly other telecommunications providers. Further, as explained in the following discussion, the language of TCPA specifically allows a state to preclude a class action, under the “if otherwise permitted” clause emphasized above.
Court’s Discretion to Vacate a Judgment
Plaintiff moves to vacate its successful judgment, pursuant to CPLR 5015 (a), and then be granted leave of the court to amend the complaint, pursuant to CPLR 3025 (b), or have the instant case dismissed without prejudice, pursuant to CPLR 3217 (b). CPLR 5015, entitled “Relief from judgment or order,” states:
“(a) On motion. The court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interested *163 person with such notice as the court may direct, upon the ground of:
“1. excusable default, if such motion is made within one year after service of a copy of the judgment or order with written notice of its entry upon the moving party, or, if the moving party has entered the judgment or order, within one year after such entry . . . (Emphasis added.)
The court notes that plaintiff moved in the instant case by a motion, not by an order to show cause. CPLR 5015 is clear that the instant motion should have been commenced by an order to show cause because the notice of motion should have been given “as the court may direct.” However, as denial of the instant motion on procedural grounds would prejudice defendant, and proceeding on the merits of the instant motion will not prejudice defendant, the court will proceed to the merits of the instant motion. (Cf. Smith v Smith, 291 AD2d 828 [4th Dept 2002]; Siegel, NY Prac § 426, at 693 [3d ed]; Siegel, 2002 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5015:12, 2004 Pocket Part, at 164.)
The court has discretionary power to grant plaintiff’s requested relief by vacating its judgments and orders for good cause. In Ladd v Stevenson (112 NY 325, 332 [1889]), the Court of Appeals observed that a court:
“[I]n the exercise of its control over its judgments . . . may open them upon the application of anyone for sufficient reason in the furtherance of justice. Its power to do so does not depend upon any statute, but is inherent, and it would he quite unfortunate if it did not possess it to the fullest extent.” (See 3d Preliminary Report of Advisory Comm on Practice and Procedure, 1959 NY Legis Doc No. 17, at 204; McMahon v City of New York, 105 AD2d 101 [1st Dept 1984].)
Therefore, this court must examine the rationale behind plaintiff’s motion, to determine if granting of the motion to vacate the judgment would, in the language of Ladd v Stevenson, be for “sufficient reason, in the furtherance of justice.” I find that vacating plaintiffs judgment would be an act contrary to justice.
Legislative History of TCPA
Due to public outrage with unsolicited telemarketing, Congress enacted TCPA. (See S Rep No. 177, 102d Cong, 1st *164 Sess; S Rep No. 178, 102d Cong, 1st Sess, reprinted in 1991 US Code Cong & Admin News, at 1968-1979.) Senate Report No. 178 (102d Cong, 1st Sess, reprinted in 1991 US Code Cong & Admin News, at 1969) states:
“The use of automated equipment to engage in telemarketing is generating an increasing number of consumer complaints . . .
“Consumers are especially frustrated because there appears to be no way to prevent these calls. The telephone companies usually do not know when their lines are being used for telemarketing purposes
“In general, those who complain about these calls believe that they are a nuisance and an invasion of privacy. Residential and business subscribers believe that these calls are an impediment to interstate commerce. In particular, they cite the following problems: . . .
“ — unsolicited calls placed to fax machines, and cellular or paging telephone numbers often impose a cost on the called party (fax messages require the called party to pay for the paper used, cellular users must pay for each incoming call, and paging customers must pay to return the call to the person who originated the call).”
Senator Ernest Hollings of South Carolina, TCPA’s sponsor, contemplated that TCPA would allow pro se litigants to have a private right, without the need to utilize attorneys, to collect damages in low-cost small claims actions. In promoting the passage of TCPA in the Senate, Senator Hollings commented (137 Cong Rec S16204-01, S16205-S16206 [Nov. 7, 1991]):
“The substitute bill contains a private right-of-action provision that will make it easier for consumers to recover damages from receiving these computerized calls. The provision would allow consumers to bring an action in State court against any entity that violates the bill. The bill does not, because of constitutional constraints, dictate to the States which court in each State shall be the proper venue for such an action, as this is a matter for State legislators to determine. Nevertheless, it is my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court. The consumer outrage at receiving these calls is *165 clear. Unless Congress makes it easier for consumers to obtain damages from those who violate this bill, these abuses will undoubtedly continue.
“Small claims court or a similar court would allow the consumer to appear before the court without an attorney. The amount of damages in this legislation is set to be fair to both the consumer and the telemarketer. However, it would defeat the purposes of the bill if the attorneys’ costs to consumers of bringing an action were greater than the potential damages. I thus expect that the States will act reasonably in permitting their citizens to go to court to enforce this bill.
“The substitute also permits the States to enforce the provisions of the bill” (emphasis added).
Enforcing Federal Law in State Courts
The United States Supreme Court, in Howlett v Rose (496 US 356 [1990]), observed that state courts have jurisdiction, unless Congress has decided otherwise, with respect to causes of action created by Congress. The Court instructed (at 367):
“Federal law is enforceable in state courts not because Congress has determined that federal courts would otherwise be burdened or that state courts might provide a more convenient forum — although both might well be true — but because the Constitution and laws passed pursuant to it are as much laws in the States as laws passed by the state legislature. The Supremacy Clause makes those laws ‘the supreme Law of the Land,’ and charges state courts with a coordinate responsibility to enforce that law according to their regular modes of procedure. ‘The laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are . . . The two together form one system of jurisprudence, which constitutes the law of the land for the State; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent.’ ” (Citations omitted; further, see Tafflin v Levitt, 493 US 455 [1990]; Chair King, Inc. v Houston Cellular Corp., 131 F3d 507, 512-513 [5th Cir 1997]; Simpson Elec. Corp. v Leucadia, Inc., 72 NY2d 450, *166 455 [1988].)
The Second Department, citing Howlett v Rose in Schulman v Chase Manhattan Bank (268 AD2d 174 [2d Dept 2000]), recognized that TCPA is enforceable in New York courts, holding (at 179), “that a private right of action may be brought in State court pursuant to the TCPA.”
The Supremacy Clause and the “Erie in Reverse” Theory
CPLR 901 (b) is clear that a class action may only be maintained in an action to recover a statutory penalty if specifically mandated by the statute authorizing the penalty. In Vickers v Home Fed. Sav. & Loan Assn. of E. Rochester (56 AD2d 62, 63-64 [4th Dept 1977]), the Court allowed a class action for alleged violation of the federal Truth-in-Lending Act (TIL), because the federal statute authorized class actions under Federal Rules of Civil Procedure rule 23, even though there were statutory penalties for the violation of TIL. TCPA does not specifically authorize class actions.
Plaintiffs counsel argues, that despite the specific prohibition of a class action for alleged TCPA violations pursuant to CPLR 901 (b), New York state courts cannot invoke CPLR 901 (b) to automatically preclude a TCPA class action. Plaintiff asserts what this court will call the “Erie in reverse” theory for its claim that a class action is permissible. As most lawyers should recall from their law school Civil Procedure course, in Erie R.R. Co. v Tompkins (304 US 64 [1938]), Mr. Justice Brandéis held that in a federal diversity suit, except for matters governed by congressional acts or the US Constitution, federal courts must apply the common-law or the statutory law of the state in which the action is outcome determinative. Plaintiff argues that there is a reciprocal duty on state courts, while following its own procedural rules, not to discriminate against the substantial rights of parties under controlling federal law. Plaintiffs counsel argues that class actions are permissible in TCPA actions, citing Felder v Casey (487 US 131 [1988]), in which the Court held (at 151):
“Just as federal courts are constitutionally obligated to apply state law to state claims, see Erie, supra, ... at 78-79, ... so too the Supremacy Clause imposes on state courts a constitutional duty ‘to proceed in such manner that all the substantial rights of the parties under controlling federal law [are] protected.’ Garrett v. Moore-McCormack, Co., *167 317 U.S. 239, 245 (1942).”
However, while state courts can use their own procedural rules when determining federal laws or rights, there are hmits to what Congress can impose, in our federal system, on sovereign states under the US Constitution’s Supremacy Clause. The Supremacy Clause (US Const art VI [2]), states:
“This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.”
Congress cannot require states to create new courts to adjudicate claims arising from federal legislation. (See Howlett v Rose at 372.) Congress may not regulate the procedural rules or the jurisdiction of state courts. (Mondou v New York, New Haven & Hartford R.R. Co., 223 US 1, 57-58 [1912] [Second Employers’ Liability Cases].) Further, in Erie R.R. Co. v Tompkins (at 78-79), Mr. Justice Brandéis imparted that
“[t]his constitution of the United States, . . . recognizes and preserves the autonomy and independence of the states, — independence in their legislative and independence in their judicial departments. Supervision over either the legislative or the judicial action of the states is in no case permissible except as to matters by the constitution specifically authorized or delegated to the United States. Any interference with either, except as thus permitted, is an invasion of the authority of the state, and, to that extent, a denial of its independence.”
While Congress has, according to New York v United States (505 US 144, 178 [1992]), “the well established power ... to pass laws enforceable in state courts,” Congress must regulate the activity. The New York v United States court further held (at 178) that “[w]here a federal interest is sufficiently strong to cause Congress to legislate, it must do so directly; it may not conscript state governments as its agents,” and in addition (at 178-179), “[flederal statutes enforceable in state courts do, in a sense, direct state judges to enforce them, but this sort of federal ‘direction’ of state judges is mandated by the text of the Supremacy Clause.”
*168 In the Second Employers’ Liability Cases, the United States Supreme Court articulated (at 59) that “[w]e conclude that rights arising under the [federal] act in question may be enforced, as of right, in the courts of the states when their jurisdiction, as prescribed by local laws, is adequate to the occasion.” The TCPA “if otherwise permitted” clause (47 USC § 227 [b] [3]), when read in context with Senator Hollings’s statement of intent, clearly demonstrates that when a state court adjudicates a case under a federal statute, local jurisdiction, procedure, venue and administration apply. A TCPA case has to fit into a state’s jurisdictional and procedural statutes. Mr. Justice Stevens, in Howlett v Rose (at 372-373), for a unanimous Court, instructed:
“The requirement that a state court of competent jurisdiction treat federal law as the law of the land does not necessarily include within it a requirement that the State create a court competent to hear the case in which the federal claim is presented. The general rule, ‘bottomed deeply in belief in the importance of state control of state judicial procedure, is that federal law takes the state courts as it finds them.’ Hart, 54 Colum. L. Rev., at 508; see also . . . The States thus have great latitude to establish the structure and jurisdiction of their own courts. See ... In addition, States may apply their own neutral procedural rules to federal claims, unless those rules are pre-empted by federal law. See Felder v. Casey, 487 U. S. 131 (1988); James v. Kentucky, 466 U. S., at 348.” (Citations omitted.)

These principles are fundamental to a system of federalism in which the state courts share responsibility for the application and enforcement of federal law.

As discussed above, Senator Hollings desired that individual consumers act as enforcers of TCPA, preferably in small claims actions. In Chair King, Inc., the Fifth Circuit (at 513), in examining Senator Hollings’s intent in passing TCPA, held:
“We agree with the Fourth Circuit’s conclusion that ‘[w]hile Senator Hollings did not explicitly say that only state court jurisdiction was appropriate, we believe the clear thrust of his statement was consistent with the bill’s text that state courts were the intended fora for private TCPA action.’ International Science & Technology Institute, Inc., 106 F3.d at *169 1153. Support for this conclusion may be found by examining the language of the statute as enacted in light of the senator’s statements. Senator Hollings indicated the intent of the bill was for consumers to easily be able to enforce the bill by recovering damages. He emphasized states should facilitate this by providing fora in which consumers could appear without an attorney. The statute’s text evidences Senator Hollings’s hopes as it provides for the right of action in state court, but gives states discretion over its administration.” (Emphasis added.)
Small claims courts in most states, including New York State, are courts of limited jurisdiction. TCPA provides for possible injunctive relief, but this relief is not available in the Civil Court of the City of New York, a court of limited jurisdiction. The intent of the “if otherwise permitted” clause is to allow states to use their own “discretion over its administration” of their courts with respect to TCPA.
Plaintiff’s “Erie in reverse” theory violates the concept of federalism. Howlett v Rose, as quoted above (at 372-373), explained that state courts retain their own administrative and procedural rules to hear suits for alleged federal statutory violation, provided that state rules are neutral and do not present obstacles to the enforcement of federal rights. The only exception to this, according to Howlett v Rose (at 380), is that “[a] State may adopt neutral procedural rules to discourage frivolous litigation of all kinds, as long as those rules are not preempted by a valid federal law.”
CPLR 901 (b) is clearly applicable to any class action in New York State, whether the statutory penalty is one for violation of state or federal law. The TCPA “if otherwise permitted” clause allows New York litigants to adjudicate TCPA claims in this court and other courts of limited jurisdiction. TCPA does not specifically authorize class actions in state courts. The Supremacy Clause of the US Constitution permits states, as explained in Howlett v Rose (at 372), to “have great latitude to establish the structure and jurisdiction of their own courts.” The rules applying to the trying of a TCPA action in New York are neutral. Therefore, plaintiffs “Erie in reverse” theory does not apply and the courts of New York State are not mandated to allow a TCPA class action, in violation of CPLR 901 (b).
If this court were to allow plaintiff to prevail, by either vacating the judgment plaintiff obtained for a TCPA violation and *170 then allowing plaintiff to amend the caption for a class action, or dismissing the case without prejudice to allow plaintiff to commence a class action, it would defile the CPLR 901 (b) proscription against class actions when statutory penalties are present. If I grant plaintiffs motion, the Legislature would need to change the name of this court from the “Civil Court” to the “Rudgayzer and Gratt Court.” Plaintiff has obtained his favorable judgment, as contemplated by Senator Hollings. To vacate plaintiffs judgment in clear violation of the CPLR 901 (b) restrictions with respect to class actions would be the utmost folly, and a failure of this court to properly utilize its discretion. Plaintiff has prevailed in the instant case and received his statutory benefit for a TCPA violation. A class action would only benefit plaintiffs counsel. Further, this court agrees with defendant’s counsel, who stated in page 1 of his affirmation in opposition, that “[pjlaintiff in bringing this action clearly demonstrate [sic] its total disregard of this court, its time and resources as well as the applicable laws.”
Conclusion
Plaintiff’s motion, to vacate the summary judgment in its favor and grant leave to amend the caption or to dismiss the action without prejudice, is dismissed.
Plaintiffs attorney, for bringing this motion, which would not benefit plaintiff beyond his previously secured judgment, but would only potentially benefit plaintiffs attorney with a class action settlement or judgment, and further causing defendant’s counsel to oppose this motion and appear before this court for oral argument, is ordered to pay $500 in costs to defendant’s counsel within 20 days of the entry of this order.